**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| **JERMAINE LACY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Case No.:  4:13-cv-00370-RWS |
| **vs.** ) | |
| ) | |
| **COL. RICHARD GRAY, COL. BETTYE** ) | |
| **BATTLE-TURNER, COL. THOMAS IRWIN,** ) | |
| **MAYOR FRANCIS G. SLAY, COL. ERWIN O.** ) | |
| **SWITZER, CHARLES C. PROCTOR**, **THE** ) | |
| **MISSOURI STATE HIGHWAY PATROL,** ) | |
| **SERGEANT PHILIP D. HOFFMAN, CASINO** ) | |
| **ONE CORPORATION d/b/a LUMIÈRE** ) | |
| **PLACE CASINO & HOTELS, and CHARLES** ) | |
| **MELLOR,** ) | |
| ) | |
| **Defendants.** ) | |

## SECOND AMENDED COMPLAINT

COMES NOW, Plaintiff, Jermaine Lacy, by and through his undersigned counsel, and for his Second Amended Complaint against Col. Richard Gray, Col. Bettye Battle-Turner, Col. Thomas Irwin, Mayor Francis G. Slay, Col. Erwin O. Switzer, Charles C. Proctor, The Missouri State Highway Patrol, Sergeant Philip D. Hoffman, Casino One Corporation d/b/a Lumière Place Casino and Hotels, and Charles Mellor (collectively, "Defendants") states as follows:

## INTRODUCTION

1.    This is a Complaint for Damages and other relief arising out of incidents occurring between Plaintiff and Defendants on or about July 5, 2012 at Lumière Place Casino and Hotels in St. Louis, Missouri.

## PARTIES

2.    Plaintiff Jermaine Lacy is a citizen and resident of St. Louis City, Missouri.

1

3.      Col. Richard Gray, Col. Bettye Battle-Turner, Col. Thomas Irwin, Mayor Francis G. Slay, and Col. Erwin O. Switzer (collectively, "Board Members") are board members for the St. Louis Board of Police Commissioners ("Police Board") sued in their official capacity, said Police Board being authorized and required to appoint, enroll, and employ a permanent police force for the City of St. Louis under RSMo. § 84.100.

4.      Defendant Charles C. Proctor was, at the time of incidents identified below, an officer with The St. Louis Metropolitan Police Department, appointed, enrolled, and employed by the Police Board, and is sued both in his individual and official capacities in this action.

5.      Defendant The Missouri State Highway Patrol is a government agency organized under the laws of the State of Missouri with its headquarters located in Cole County, Missouri and performing its myriad functions throughout the State of Missouri, including, but not limited to, the City of St. Louis, Missouri.

6.      Defendant Sergeant Philip D. Hoffman was, at the time of incidents identified below, a Missouri State Highway Patrolman, and is sued both in his individual and official capacities in this action.

7.      Defendant Casino One Corporation d/b/a Lumière Place Casino and Hotels ("Lumière Casino") is a corporation incorporated under the laws of the States of Delaware and Mississippi, with its principal place of business in Las Vegas, Nevada that operates gambling, dining, entertainment, and hotel venues in, among other places, the City of St. Louis, Missouri.  Lumière Casino employs security guards licensed by the Missouri Gaming Commission and by local governments under RSMo. § 71.195.

2

8.     Defendant Charles Mellor was, at the time of the incidents identified below, an Emergency Medical Technician and Security Guard employed by Lumière Casino, and is sued both in his individual and official capacities in this action.

<u>**JURISDICTION AND VENUE**</u>

9.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 USC § 1367.

10.     Venue is proper in this Court pursuant to 28 USC § 1391(b) because a substantial part of the events giving rise to the claims expressed herein occurred in the City of St. Louis, Missouri, which is located in the United States District Court for the Eastern District of Missouri.

<u>**FACTS COMMON TO ALL COUNTS**</u>

11.     In approximately 2010, Mr. Lacy had been permanently banned from Lumière Casino, and ordered by the Circuit Court for the City of St. Louis to stay away from the premises at 999 N. 2nd Street, St. Louis, Missouri 63102 (hereinafter "the premises"), which includes Lumière Casino.

12.     On or about July 5, 2012, Plaintiff Jermaine Lacy entered Lumière Casino.

13.     After entering Lumière Casino, Mr. Lacy commenced playing craps at one of the gaming tables located on the casino floor.

14.     After seeing the enjoyable experience Mr. Lacy was having, and presumably believing that Mr. Lacy was winning at the gaming table, another Lumière Casino patron gave Mr. Lacy a certain amount of gaming chips to wager, with the understanding that Mr. Lacy and the other casino patron would split the winnings.

15.     Mr. Lacy subsequently lost the chips that the other casino patron gave Mr. Lacy to wager, and an argument between Mr. Lacy and the other casino patron ensued.

16.     The attention caused by the argument drew the attention of Lumière Casino security guards.

17.     One or more Lumière Casino security guards whose attention was garnered by the argument between Mr. Lacy and the other casino patron took Mr. Lacy off of the casino floor and into custody.

18.     Sergeant Philip D. Hoffman, an employee of the Gaming Division of the Missouri State Highway Patrol, was contacted by the Lumière Casino security manager – Andrew Briggs – to come assist in taking Mr. Lacy into custody.

19.     Mr. Lacy was eventually taken to a gaming office in the casino at approximately 2:27 a.m. where he was accompanied by Sergeant Philip D. Hoffman, Andrew Briggs, Defendant Charles Mellor, and Matt Harman – the last individual being EMT/Security Guards employed by Lumière Casino. *See Exhibits 1 – 2.*

20.     When he first accompanied Mr. Lacy to the gaming office, Sergeant Philip D. Hoffman was initially wearing a sport coat.  *See e.g. Exhibit 1 (Sergeant Philip D. Hoffman is the individual closest to the door).*

21.     Throughout the incidents described herein, Charles Mellor was wearing a red blazer.  *See e.g. Exhibit 3 (Charles Mellor seen pushing the wheelchair).*

22.     When he was taken in to the gaming office, Mr. Lacy was walking under his own power.  *See Exhibits 1 – 2.*

23.     In the gaming office, Mr. Lacy was handcuffed, and initially told to sit in a chair.

4

24.     Charles Mellor, having been summoned by one of his supervisors and/or Sergeant Philip D. Hoffman, entered the gaming office.

25.     When Charles Mellor arrived at the office, Mr. Lacy complained about a pain in one of his knees.

26.     Matt Harmon and/or Charles Mellor discovered that the only injury that Mr. Lacy was suffering from was an abrasion on one of his knees that was the size of a nickel.

27.     At one point, Mr. Lacy let his body go limp, and slumped onto the floor in a controlled fashion.

28.     While lying on the floor, Sergeant Philip D. Hoffman reminded Mr. Lacy that Mr. Lacy had walked into the office "just fine."

29.     After being told the foregoing by Sergeant Philip D. Hoffman, Mr. Lacy stopped pretending like he was injured.

30.     At this point, neither Sergeant Philip D. Hoffman nor Charles Mellor believed that Mr. Lacy was in any sort of pain, nor did they believe that he was unconscious.

31.     While Mr. Lacy was lying on the floor, Charles Mellor, acting at the direction of Sergeant Philip D. Hoffman, performed a sternum rub on Mr. Lacy.

32.     Sergeant Philip D. Hoffman knows that a sternum rub is used to determine whether an individual is unconscious, or not, as well as that a sternum rub can be painful.

33.     Because both Sergeant Philip D. Hoffman and Charles Mellor believed that Mr. Lacy was feigning unconsciousness while lying on the floor in the gaming office, a sternum rub was not a necessary procedure to perform on Mr. Lacy.

34.     Subsequently, Mr. Lacy asked to speak privately with Sergeant Philip D. Hoffman in an apparent effort to avoid further incarceration.

35.     Mr. Lacy and Sergeant Philip D. Hoffman spoke privately in a small room inside of the gaming office.

36.     After Sergeant Philip D. Hoffman told Mr. Lacy he would do what he could to prevent the further incarceration of Mr. Lacy, Mr. Lacy and Sergeant Philip D. Hoffman rejoined the other individuals in the gaming office.

37.     After Sergeant Philip D. Hoffman obtained Mr. Lacy's identity, Sergeant Philip D. Hoffman ran Mr. Lacy's name through one or more databases, and discovered that Mr. Lacy had a neighborhood order of protection issued against him which forbade him from coming onto the Lumière Casino premises.

38.     One or more of the foregoing databases indicated that Sergeant Philip D. Hoffman was to follow Special Order 5-09.

39.     Sergeant Philip D. Hoffman did not know what Special Order 5-09, and as a result, called The St. Louis Metropolitan Police Department in order to determine what needed to be done with Mr. Lacy.

40.     Sergeant Philip D. Hoffman was informed by The St. Louis Metropolitan Police Department that officers would be coming to the casino to handle the situation.

6

41.     Before the arrival of officers from The St. Louis Metropolitan Police Department, Sergeant Philip D. Hoffman directed Charles Mellor and/or another Lumière Casino employee to retrieve a wheelchair.

42.     The wheelchair retrieved by Charles Mellor and/or another Lumière Casino did not, at the time of the retrieval, did not suffer from any visible damage.

43.     When placed in the wheelchair, Mr. Lacy was either handcuffed to the wheelchair, or his hands were handcuffed behind his back.

44.     At one point after Mr. Lacy was placed in the wheelchair and handcuffed, Sergeant Philip D. Hoffman punched, hit, struck, and/or threatened to use a taser on Mr. Lacy.

45.     Approximately 10 to 15 minutes after Sergeant Philip D. Hoffman placed a call to The St. Louis Metropolitan Police Department, Officer Charles C. Proctor arrived at Lumière Casino.

46.     Upon entering the gaming office, Officer Proctor asked what was going on, and Mr. Lacy indicated that Sergeant Philip D. Hoffman was "beating" him, to which Officer Proctor told Mr. Lacy to "shut the fuck up."

47.     After being told to "shut the fuck up," Mr. Lacy bowed his head, and feigned unresponsiveness.

48.     While seated in the wheelchair, Mr. Lacy was not acting in a threatening manner.

49.     In response to Mr. Lacy's apparent unresponsiveness, Officer Proctor then pulled out an Armament Systems and Procedures, Inc. ("ASP") baton used in the scope of his employment, and proceeded to strike Mr. Lacy on or around his right knee with

such force that Defendant Charles Mellor – who saw Officer Proctor swing the baton – thought that it was possible that Mr. Lacy's leg was broken by the impact.

50.     At this point, Mr. Lacy screamed out, and appeared to be in pain.

51.     Charles Mellor believed that the baton strike sounded like something hitting a piece of wood.

52.     When an individual is on Lumière Casino premises, Charles Mellor believes that an EMT employed by Lumière Casino has a duty to provide medical care. Nonetheless, Charles Mellor also believes that when an individual is in the custody of an officer with The St. Louis Metropolitan Police Department, the provision of medical treatment is at the discretion of said officer.

53.     Once Officer Proctor arrived at the gaming office in Lumière Casino, he took custody of Mr. Lacy.

54.     At no time following Officer Proctor's arrival at the gaming office did Officer Proctor instruct Charles Mellor to provide Mr. Lacy with any medical attention, despite Charles Mellor's belief that Mr. Lacy was in pain and possibly suffered a broken leg.

55.     After the ASP baton strike, Officer Proctor said, "wake up motherfucker," called Mr. Lacy a "pussy," and Sergeant Philip D. Hoffman began to punch, hit, and/or strike Mr. Lacy in his stomach.

56.     Subsequently, Officer Proctor told Mr. Lacy that he was going to take Mr. Lacy out of the casino in the wheelchair in which he was still seated, and that while Mr. Lacy was being wheeled through the casino, that Mr. Lacy was not to say anything.

8

57.     At approximately 4:01 a.m., Charles Mellor wheeled Mr. Lacy out of the gaming office at the direction of Officer Proctor in the wheelchair to which Mr. Lacy's left arm was handcuffed.  *See Exhibits 3 – 4.*

58.     After Charles Mellor wheeled Mr. Lacy a certain distance, Officer Proctor directed Sergeant Philip D. Hoffman and Charles Mellor to turn the wheelchair around, and wheel Mr. Lacy backwards.

59.     Initially after Officer Proctor directed Sergeant Philip D. Hoffman and Charles Mellor to turn the wheelchair around, Sergeant Philip D. Hoffman and Charles Mellor were each positioned on either side of the wheelchair, and pulled and/or pushed the wheelchair in which Mr. Lacy was situated.  *See Exhibit 5.*

60.     Mr. Lacy began to make verbal comments despite Officer Proctor's admonition not to do so.

61.     Additionally, Mr. Lacy began to slump down in the wheelchair.  *See Exhibit 5.*

62.     In order to place Mr. Lacy back in the wheelchair in an upright position, Officer Proctor, with the assistance of Charles Mellor, grabbed Mr. Lacy by the neck or the area nearby his neck, and lifted Mr. Lacy back into the wheelchair.  *See Exhibits 6 - 8.*

63.     Subsequently, in retaliation for certain verbal comments made by Mr. Lacy and/or Mr. Lacy's lack of cooperation in staying seated upright in the wheelchair, Officer Proctor began to choke Mr. Lacy for a period of approximately 10 seconds.  *See Exhibits 9 - 16.*

64.     As a result of Mr. Lacy's attempt to escape the choking by Officer Proctor, coupled with the downward force being applied by Officer Proctor to Mr. Lacy, Mr. Lacy slid downward in, and ultimately out of, the wheelchair.  *See Exhibits 16 - 18.*

65.     Officer Proctor once again lifted Mr. Lacy off of the ground by either his neck and/or his shirt, and violently slammed Mr. Lacy's body back in the wheelchair. *See Exhibits 19 - 22.*

66.     After Mr. Lacy was once again in the wheelchair, Officer Proctor and Sergeant Philip D. Hoffman, with Charles Mellor following behind, wheeled Mr. Lacy out of the inside of Lumière Casino.  *See Exhibits 23, 37 - 38.*

67.     While Officer Proctor and Sergeant Philip D. Hoffman wheeled Mr. Lacy out of the inside of Lumière Casino, Officer Proctor, for a period of approximately 40 - 45 seconds, forcibly bent Mr. Lacy's head back and choked Mr. Lacy with his right hand. *See Exhibits 24 - 48.*

68.     From his position, Sergeant Philip D. Hoffman could see that Officer Proctor's thumb was across the throat of Mr. Lacy.

69.     Sergeant Philip D. Hoffman believes that if he saw Officer Proctor choking Mr. Lacy and did not report it to any police entity that Sergeant Philip D. Hoffman would be subject to discipline.

70.     Sergeant Philip D. Hoffman believes, however, that while Officer Proctor had his thumb was across the throat of Mr. Lacy, that Officer Proctor was not choking Mr. Lacy because Mr. Lacy, according to Sergeant Philip D. Hoffman, still had the ability to breathe and speak.

71.     Sergeant Philip D. Hoffman further believes, though, that it can be painful when a thumb is pressing on an individual's Adam's Apple despite the individuals' retention of the ability to breathe and speak.

72.     Once outside of Lumière Casino, Officer Proctor and Sergeant Philip D. Hoffman wheeled Mr. Lacy over to the passenger side of the rear bumper of Officer Proctor's police cruiser whereby Officer Proctor rammed Mr. Lacy's head into said bumper.  *See Exhibits 40 - 48.*

73.     After ramming Mr. Lacy's head into the bumper, Officer Proctor grabbed the back of Mr. Lacy's neck and forcefully lifted him upward and forward.  *See Exhibits 49 - 55.*

74.     Officer Proctor then put his face close to Mr. Lacy's face at which point Officer Proctor began or continued yelling at Mr. Lacy.  *See Exhibits 56, 63.*

75.     Mr. Lacy then fell backward in the wheelchair and began grabbing the front of his neck and gasping for air.  *See Exhibits 57 - 62.*

76.     As a result of the force and duration of Officer Proctor's choking of Mr. Lacy, Officer Proctor was caused to shake out his right hand.  *See Exhibits 64 – 66.*

77.     Charles Mellor, seeing that Mr. Lacy appeared to be in pain, came over to the wheelchair to apply the brakes of said wheelchair in a further effort to secure Mr. Lacy.  *See Exhibits 68 – 75.*

78.     During Charles Mellor's application of the brakes, Sergeant Philip D. Hoffman stood nearby, at one point crossing his legs in a standing position, and placing one hand on the passenger side quarter panel of Officer Proctor's police cruiser.  *See Exhibits 75 – 80.*

79.     At no time following the wheeling of Mr. Lacy out of the gaming office did Officer Proctor instruct Charles Mellor to provide Mr. Lacy with any medical attention, despite Charles Mellor's belief that Mr. Lacy was in pain.

80.     The wheelchair which was occupied by Mr. Lacy ultimately suffered tears in the plastic seat back as a result of the force Officer Proctor applied to Mr. Lacy's neck, causing Mr. Lacy's back to be forced into the seat back.

81.     After a larger police vehicle arrived at the casino, Officer Proctor transferred Mr. Lacy into the larger police vehicle.  *See Exhibits 81 – 82.*

82.     The larger police vehicle took Mr. Lacy to the justice center in the City of St. Louis, Missouri, and Officer Proctor followed the larger police vehicle to the justice center.

83.     Once at the justice center, Officer Proctor and Mr. Lacy began or continued conversing.

84.     Taking offense to comments by Mr. Lacy about Officer Proctor's weight and/or presumed eating habits, Officer Proctor grabbed the linkage of the handcuffs that bound Mr. Lacy's hands behind his back, and walked Mr. Lacy towards a wall.

85.     Officer Proctor then shoved Mr. Lacy's body towards the wall that Mr. Lacy was facing, at which point Mr. Lacy turned slightly, causing one the upper portion of one of Mr. Lacy's arms and/or one of Mr. Lacy's shoulders to impact the wall that Mr. Lacy was originally facing.

86.     After Mr. Lacy's arm and/or shoulder impacted the wall, Mr. Lacy caused himself to turn his body such that Mr. Lacy was then facing Officer Proctor with Mr. Lacy's back to the wall.

12

87.     Immediately thereafter, Mr. Lacy's back began sliding down the wall until Mr. Lacy came to rest in a seated position on a bench immediately next to the wall.

88.     Once in a seated position, Officer Proctor struck Mr. Lacy in Mr. Lacy's mouth with Officer Proctor's elbow and/or forearm.

89.     The impact of Officer Proctor's elbow and/or forearm with Mr. Lacy's mouth caused Mr. Lacy's lip and gums to bleed profusely.  *See Exhibits 83 – 84.*

90.     Some of the blood from Mr. Lacy's lip and gums spilled on to Mr. Lacy's shirt.  *See Exhibit 85.*

91.     Despite Mr. Lacy's injuries, and before he was booked by justice center personnel, he was denied medical attention by Officer Proctor and other individuals employed by the Board Members, and was only provided a napkin by a nurse at the justice center.

92.     Eventually, Mr. Lacy was released from the custody of The St. Louis Metropolitan Police Department, and took himself to Barnes-Jewish Hospital in St. Louis, Missouri to receive medical attention for the physical wounds that were inflicted on him at Lumière Casino and the justice center.

93.     For at least three (3) months following the incidents described above, Mr. Lacy suffered pain in his mouth and neck, and suffered scarring and/or other permanent and/or semi-permanent markings on his neck and body.

94.     After Mr. Lacy sought treatment for his physical injuries, he reported Officer Proctor's acts to the internal affairs division of The St. Louis Metropolitan Police Department.

13

95.     An investigation of Officer Proctor's aforesaid acts was undertaken by the internal affairs division of The St. Louis Metropolitan Police Department, and ultimately, Officer Proctor was arrested and suspended from his position with The St. Louis Metropolitan Police Department.

96.     In his medical report, Charles Mellor did not mention the ASP baton strike by Officer Proctor or the choking of Mr. Lacy by Officer Proctor because he works side by side with The St. Louis Metropolitan Police Department.

97.     Further, Charles Mellor did not want to report the acts of Officer Proctor for fear of being singled out by officers with The St. Louis Metropolitan Police Department.

98.     Additionally, Charles Mellor believed that his job would be in jeopardy were he to report the foregoing acts of Officer Proctor.

99.     The Missouri State Highway Patrol undertook an investigation of Sergeant Philip D. Hoffman's aforesaid acts in which Sergeant Philip D. Hoffman was cleared of any alleged wrongdoing.

100.    Finally, as of the date of this filing, Mr. Lacy was not charged with resisting arrest for any of the acts or omissions identified in the foregoing paragraphs.

## COUNT I – EXCESSIVE FORCE
(Col. Richard Gray, Col. Bettye Battle-Turner, Col. Thomas Irwin, Mayor Francis G. Slay, Col. Erwin O. Switzer, Charles C. Proctor, Sergeant Philip D. Hoffman in his individual capacity, Casino One Corporation d/b/a Lumière Place Casino and Hotels, and Charles Mellor)

101.    Paragraphs 1 through 100 are incorporated by reference, herein.

102.    This Count arises against Defendants, who, while acting under color of state law, caused to violate Mr. Lacy's rights under the 4th Amendment to the United States Constitution and under Title 42 U.S.C. § 1983.

103.    Defendants Officer Proctor, Sergeant Philip D. Hoffman, and Charles Mellor violated Mr. Lacy's constitutional right to be free from excessive force by repeatedly and without reasonable provocation, or acting in furtherance thereof, by striking, hitting, punching, choking, and/or performing a painful and unnecessary sternum rub on or about the times identified above.

104.    Lumière Casino, through its employee Charles Mellor, while acting at the direction of Officer Proctor and/or Sergeant Philip D. Hoffman, assisted in the imposition of the choking of Mr. Lacy when Charles Mellor performed an unnecessary sternum rub on Mr. Lacy, when Charles Mellor helped steady the wheelchair in which Mr. Lacy was being transported so as to allow Officer Proctor to maintain a chokehold on Mr. Lacy, and when Charles Mellor failed to intervene in said choking despite having had an opportunity to intervene to prevent Mr. Lacy from suffering further harm.

105.    The Board Members violated Mr. Lacy's constitutional right to be free from excessive force by failing to properly train and/or supervise Officer Proctor with respect to the constitutional duty owed to Mr. Lacy to keep him free from excessive force during the incidents that occurred on or about July 5, 2012.

106.    Defendants' acts showed complete indifference to or conscious disregard to the constitutional rights of Mr. Lacy insofar as Defendants' acts and/or omissions served to stifle the same.

107.    As a direct and proximate result of Defendants' conduct, Plaintiff was caused to suffer physical and mental injuries and was required to obtain medical services and treatment in an amount which has not yet been determined.

Wherefore, Plaintiff demands judgment against Defendants as follows:

15

    a.      Compensatory damages in an amount in excess of $25,000.

    b.      Medical and related expenses in an amount which has not yet been determined.

    c.      Punitive damages;

    d.      Costs of this action; and

    e.      Any other and further relief that the Court considers proper.

**COUNT II – DENIAL OF MEDICAL TREATMENT**
(Col. Richard Gray, Col. Bettye Battle-Turner, Col. Thomas Irwin, Mayor Francis G. Slay, Col. Erwin O. Switzer, Charles C. Proctor, Casino One Corporation d/b/a Lumière Place Casino and Hotels, and Charles Mellor)

108.   Paragraphs 1 through 100 are incorporated by reference, herein.

109.   This Count arises against Defendants, who, while acting under color of state law, caused to violate Mr. Lacy's rights under the 14th Amendment to the United States Constitution and under Title 42 U.S.C. § 1983.

110.   During the time period of the events mentioned above, Mr. Lacy was a pretrial detainee.

111.   Despite suffering serious physical injuries as indicated above, Defendants denied Mr. Lacy proper medical treatment for the same.

112.   More specifically, Mr. Lacy was denied medical treatment by Defendants when Officer Proctor would not authorize Charles Mellor – who was acting under the direction of Officer Proctor – to provide Mr. Lacy with medical treatment after being struck with an ASP baton, after being choked by Officer Proctor, or after being rammed into the bumper of Officer Proctor's vehicle despite Charles Mellor's belief that Mr. Lacy was injured as a result of one or more of the foregoing acts.

113.   Additionally, due to the excessive force inflicted on Mr. Lacy by Sergeant Philip D. Hoffman and Officer Proctor, Mr. Lacy suffered serious medical conditions that the Board Members, through their employees, including Officer Proctor, were deliberately indifferent to once Mr. Lacy was at the justice center.

114.   It was known or should have been known by Officer Proctor and other individuals employed by the Board Members, that Mr. Lacy, who suffered temporary or permanent scars on his person as well as bloody gums and lips was in need of medical care, but nonetheless disregarded Mr. Lacy's health and safety.

115.   The Police Board and Officer Proctor's acts showed complete indifference to or conscious disregard to the constitutional rights of Mr. Lacy insofar as Officer Proctor's acts served to stifle the same, and the Police Board failed to adequately train Officer Proctor and/or ensure that St. Louis Metropolitan Police Department and/or Police Board policies would provide for compliance with the same.

116.   As a direct and proximate result of Defendants' conduct, Plaintiff was caused to endure physical and mental pain, and after eventually being released by Defendants was required to obtain medical services and treatment on his own and in an amount which has not yet been determined.

Wherefore, Plaintiff demands judgment against Defendants as follows:

a.    Compensatory damages in an amount in excess of $25,000.

b.    Medical and related expenses in an amount which has not yet been determined.

c.    Punitive damages;

d.    Costs of this action; and

    e.    Any other and further relief that the Court considers proper.

## COUNT III – BREACH OF DUTY TO PROTECT
(Col. Richard Gray, Col. Bettye Battle-Turner, Col. Thomas Irwin, Mayor Francis G. Slay, Col. Erwin O. Switzer, Charles C. Proctor, Sergeant Philip D. Hoffman in his individual capacity, Casino One Corporation d/b/a Lumière Place Casino and Hotels, and Charles Mellor)

117.    Paragraphs 1 through 116 are incorporated by reference, herein.

118.    This Count arises against Defendants, who, while acting under color of state law and within the scope of their employment, caused to violate Mr. Lacy's rights under the 14th Amendment to the United States Constitution and under Title 42 U.S.C. § 1983.

119.    When Defendants took, or assisted in the taking of, Mr. Lacy into custody on or around July 5, 2012, they had a duty to duty to protect Mr. Lacy.

120.    Despite such a duty, Mr. Lacy was caused to endure further harm, physical, and mental anguish at the hands of Officer Proctor, Sergeant Philip D. Hoffman, and Charles Mellor when the same inflicted excessive force on Mr. Lacy and denied Mr. Lacy medical treatment for his injuries.

121.    Defendants' acts showed complete indifference to or conscious disregard to the constitutional rights of Mr. Lacy insofar as Defendants' acts served to stifle the same.

122.    As a direct and proximate result of Defendants' conduct, Plaintiff was caused to endure physical and mental pain, and after eventually being released by Defendants was required to obtain medical services and treatment on his own and in an amount which has not yet been determined.

Wherefore, Plaintiff demands judgment against Defendants as follows:

a.     Compensatory damages in an amount in excess of $25,000.

b.     Medical and related expenses in an amount which has not yet been determined.

c.     Punitive damages;

d.     Costs of this action; and

e.     Any other and further relief that the Court considers proper.

### COUNT IV – DEPRIVATION OF FREE SPEECH
(Col. Richard Gray, Col. Bettye Battle-Turner, Col. Thomas Irwin, Mayor Francis G. Slay, Col. Erwin O. Switzer, Charles C. Proctor, Sergeant Philip D. Hoffman in his individual capacity, Casino One Corporation d/b/a Lumière Place Casino and Hotels, and Charles Mellor)

123.   Paragraphs 1 through 100 are incorporated by reference, herein.

124.   This Count arises against Defendants, who, while acting under color of state law and within the scope of their employment, caused to violate Mr. Lacy's rights under the 1st Amendment to the United States Constitution and under Title 42 U.S.C. § 1983.

125.   Officer Proctor, while in the gaming office, while wheeling Mr. Lacy out of Lumière Casino, and while at the justice center violated Mr. Lacy's right to free speech when Officer Proctor told Mr. Lacy to "shut the fuck up," when Officer Proctor told Mr. Lacy that he was not to say anything as they left the casino, when Officer Proctor choked Mr. Lacy in an attempt to stifle Mr. Lacy's speech once Mr. Lacy did begin to speak, and when Officer Proctor forced Mr. Lacy against a wall at the justice center and hit Mr. Lacy in the mouth with his forearm and/or elbow in response to Mr. Lacy's comments about Officer Proctor's weight and/or presumed eating habits.

126.   Sergeant Philip D. Hoffman and Charles Mellor, acting at the direction of Officer Proctor in assisting in the wheeling of Mr. Lacy out of the casino while Officer Proctor choked Mr. Lacy in an attempt to stifle Mr. Lacy's speech, assisted in said stifling.

127.   These actions caused Mr. Lacy to be deprived of his constitutionally protected right to free speech.

128.   Defendants' acts showed complete indifference to or conscious disregard to the constitutional rights of Mr. Lacy insofar as Officer Proctor's acts served to stifle the same.

129.   The Police Board failed to ensure that Office Proctor was adequately trained and/or supervised regarding the same.

130.   As a direct and proximate result of Defendants' conduct, Plaintiff was caused to endure physical and mental pain, and after eventually being released by Defendants was required to obtain medical services and treatment on his own and in an amount which has not yet been determined.

Wherefore, Plaintiff demands judgment against Defendants as follows:

a.   Compensatory damages in an amount in excess of $25,000.

b.   Medical and related expenses in an amount which has not yet been determined.

c.   Punitive damages;

d.   Costs of this action; and

e.   Any other and further relief that the Court considers proper.

## COUNT V – ASSAULT
### (All Defendants)

131.    Paragraphs 1 through 100 are incorporated by reference, herein.

132.    As a result of the foregoing acts, Mr. Lacy suffered apprehension of bodily harm, was frightened and otherwise caused to fear imminent bodily harm to him by Defendants' or Defendants' employees.

133.    Defendants' or Defendants' employees acts occurred in the scope of their employment, and showed complete indifference to or conscious disregard to the safety of Mr. Lacy insofar those acts directly and proximately caused Mr. Lacy to suffer mental pain which endured after eventually being released by The St. Louis Metropolitan Police Department.

Wherefore, Plaintiff demands judgment against Defendants as follows:

a.    Compensatory damages in an amount in excess of $25,000.

b.    Medical and related expenses in an amount which has not yet been determined.

c.    Punitive damages;

d.    Costs of this action; and

e.    Any other and further relief that the Court considers proper.

## COUNT VI – BATTERY
### (All Defendants)

134.    Paragraphs 1 through 102 are incorporated by reference, herein.

135.    As a result of the foregoing acts, Mr. Lacy suffered bodily harm at the hands of Defendants' or Defendants' employees.

136.   Defendants' or Defendants' employees acts occurred in the scope of their employment, and showed complete indifference to or conscious disregard to the safety of Mr. Lacy insofar those acts directly and proximately caused Mr. Lacy to suffer physical and mental pain which endured after eventually being released by The St. Louis Metropolitan Police Department, and caused Mr. Lacy to obtain medical services and treatment on his own and in an amount which has not yet been determined.

Wherefore, Plaintiff demands judgment against Defendants as follows:

a.     Compensatory damages in an amount in excess of $25,000.

b.     Medical and related expenses in an amount which has not yet been determined.

c.     Punitive damages;

d.     Costs of this action; and

e.     Any other and further relief that the Court considers proper.

## COUNT VII – CIVIL CONSPIRACY TO COMMIT ASSAULT AND BATTERY
(All Defendants)

137.   Paragraphs 1 through 102 are incorporated by reference, herein.

138.   As a result of Defendants' or Defendants' employees' wrongful and intentional conduct against Mr. Lacy, Mr. Lacy was caused to suffer reasonable apprehension of and actual bodily harm.

139.   The Defendants' acts of joint participation caused Mr. Lacy to suffer one or more assaults and/or one or more batteries, and served as an agreement by Defendants to perform one or more unlawful acts and/or to use unlawful means to purportedly lawfully take Mr. Lacy into custody.

140.    Defendants' or Defendants' employees acts occurred in the scope of their employment, and showed complete indifference to or conscious disregard to the safety of Mr. Lacy insofar those acts directly and proximately caused Mr. Lacy to suffer physical and mental pain, which endured after eventually being released by The St. Louis Metropolitan Police Department, and caused Mr. Lacy to obtain medical services and treatment on his own and in an amount which has not yet been determined.

Wherefore, Plaintiff demands judgment against Defendants as follows:

a.    Compensatory damages in an amount in excess of $25,000.

b.    Medical and related expenses in an amount which has not yet been determined.

c.    Punitive damages;

d.    Costs of this action; and

e.    Any other and further relief that the Court considers proper.

Respectfully submitted,

THE GOGEL LAW FIRM


/s/ *Jeremy A. Gogel*

Jeremy A. Gogel, #61866MO
4245 West Pine Boulevard
St. Louis, Missouri 63108
Phone: (314) 775-3864
Fax: (314) 531-1069
Email: jeremy@gogellawfirm.com

**Attorney for Plaintiff**

and

THE MANDEL LAW GROUP


/s/ *Todd A. Mandel*

Todd A. Mandel, #41045MO
4245 West Pine Boulevard
St. Louis, Missouri 63108
Phone: (314) 361-5678
Fax: (314) 531-1069
Email: toddmandel@att.net

**Attorney for Plaintiff**