UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JERMAINE LACY,                          )
                                        )
            Plaintiff,                  )
                                        )
      vs.                               )      Case No. 4:13CV370 RWS
                                        )
COL. RICHARD GRAY, et al.,              )
                                        )
            Defendants.                 )

## **MEMORANDUM AND ORDER**

On July 5, 2012, Jermaine Lacy trespassed on Lumiere Place Casino &

Hotels despite three criminal cases banning him from the property.  While there,

he got into a fight and was taken into custody by Missouri State Trooper Sergeant

Philip Hoffman of the Gaming Division of the State Highway Patrol.  Lumiere

security guard Charles Mellor, also an EMT, was called to assist Hoffman.  After

being taken to the casino gaming office, Lacy slumped on the floor, "pretending . .

. he was injured."  (Pl.'s Second Am. Complaint ¶ ¶ 27-29).  Lacy then faked

unconsciousness, so Hoffman directed Mellor to perform a sternum rub[1] on Lacy

to determine whether he was unconscious.  Lacy alleges this procedure was

unnecessary because Hoffman and Mellor knew he was faking it.  After running

---

[1]"A sternum rub is accomplished by applying pressure with the knuckles upon a person's sternum."  Young v. Harrison, 284 F.3d 863, 866 n.2 (8th Cir. 2002).  This is a viable medical procedure to determine consciousness .  Pardue v. Glass, 2008 WL 249173, *22 (Jan. 29, 2008); see also Lewis v. Babich, 2007 WL 957003, *9 (E.D. Mo. Mar. 28, 2007).

Lacy's name through a database, Hoffman discovered that he was "to follow Special Order 5-09." (Id. at 38). Hoffman did not know what this meant, so he contacted the St. Louis Metropolitan Police Department, which dispatched officers to the scene. Lacy was then handcuffed to a wheelchair to await the arrival of the police. Lacy alleges that Hoffman then "punched, hit, struck, and/or threatened to" taser him. (Id. at 44).

St. Louis Metropolitan Police Officer Charles Proctor arrived to take Lacy to jail. According to Lacy, when he told Proctor that Hoffman was "beating him," Proctor told him "to shut the fuck up." (Id. at 46). Lacy then claims he "bowed his head, and feigned unresponsiveness." ((Id. at 47.). Lacy alleges that, in response, Proctor took out his baton, hit him on the knee, told him to "wake up motherfucker," and called him a "pussy." (Id. at 55). Lacy alleges that Hoffman then struck him in the stomach. Proctor then told Lacy to be quiet when he was being wheeled through the casino. Mellor then began pushing Lacy's wheelchair, with Proctor and Hoffman steadying the wheelchair on either side. Once on the casino floor, Lacy ignored the instructions of Proctor and began "to make verbal comments" and "to slump down in the wheelchair." (Id. at 60-61). Lacy alleges that Proctor then choked him for 10 seconds, so he slid out of the wheelchair. Lacy alleges that Proctor then lifted him off the ground by either his neck or his shirt and slammed him back in the wheelchair. Proctor then allegedly choked

Lacy again, this time for 45 seconds, by pressing on his Adam's apple.

Once outside the casino, Lacy alleges that Proctor rammed his head into the bumper of Proctor's police car and yelled at him. During the ride to jail, Lacy made comments to Proctor about his "weight and/or presumed eating habits." (Id. at 84), causing Proctor to shove him against a wall and to elbow him in the mouth once they arrived at the station. Lacy alleges that he complained about Proctor to the police department, and that after an investigation Proctor was suspended and arrested for his conduct.

In his second amended complaint, Lacy brings § 1983 claims against the St. Louis Police Board members, Proctor, Hoffman in his individual capacity only, the casino, and Mellor for excessive force, denial of medical treatment, breach of duty to protect, and deprivation of free speech. Lacy also alleges Missouri state law claims of assault, battery, and civil conspiracy to commit assault and battery against these defendants and the Missouri State Highway Patrol.

Several groups of defendants have filed motions to dismiss under Fed. R. Civ. P. 12(b)(6). The police board defendants[2] move to dismiss all claims against them for failure to adequately allege claims. The Missouri State Highway Patrol moves to dismiss the claims against it and the state law official capacity claims

---

[2]Mayor Francis Slay, Jr., Bettye Battle-Turner, Richard Gray, Erwin O. Switzer, and Thomas Irwin.

against Hoffman based on sovereign immunity. Hoffman also moves to dismiss the First Amendment claim against him for failure to state a claim. The casino and Mellor seek dismissal of all claims on several grounds. For the reasons stated below, the motions to dismiss will be granted.

Discussion

When ruling upon a motion to dismiss under Fed. R. Civ. P. 12(b)(6), I must accept as true all factual allegations in the complaint and view them in the light most favorable to Lacy. Erickson v. Pardus, 551 U.S. 89, 94 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although I must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party," United States v. Any & All Radio Station Transmission Equip., 207 F.3d 458, 462 (8th Cir. 2000), "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). "Where the allegations show on the face of the complaint there is some

insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." <u>Benton v. Merrill Lynch & Co., Inc.</u>, 524 F.3d 866, 870 (8th Cir. 2008).

The Missouri State Highway Patrol contends that Lacy's state law claims against it are barred by sovereign immunity. Mo. Rev. Stat. § 537.600 provides that public entities such as the Missouri State Highway Patrol enjoy immunity from suit unless it is waived, abrogated, or modified by statute. <u>Richardson v. City of St. Louis</u>, 293 S.W.3d 133, 136 (Mo. Ct. App. 2009); <u>Fischer v. Steward</u>, 2010 WL 147865, *11 (E. D. Mo. Jan. 11, 2010). "Under Missouri law, sovereign immunity is waived only in cases involving injuries directly resulting from the negligent act of a public employee arising out of the operation of a motor vehicle within the course of the person's employment, or for injuries caused by the condition of a public entity's property." <u>Shell v. Ebker</u>, 2006 WL 1026982, *10 (E.D. Mo. Apr. 14, 2006) (citing Mo. Rev. Stat. § 537.600.1 (1)-(2)). Because these exceptions do not apply to this case, sovereign immunity bars Lacy's state law claims for assault, battery, and civil conspiracy against the Missouri State Highway Patrol. Moreover, as "[a] suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity," <u>Veatch v. Bartles Lutheran Home</u>, 627 F.3d 1254, 1257 (8th Cir. 2010), Lacy's state law claims brought against Hoffman in his official capacity are also barred by sovereign immunity and will be dismissed.

Lacy, relying on <u>Lapides v. Board of Regents of the University System of Georgia</u>, 535 U.S. 613 (2002), argues that these defendants waived their right to assert sovereign immunity as a defense to the state law claims because they consented to the removal of this suit to federal court. Lacy is wrong. "In <u>Lapides</u>, the Court limited its holding to situations where the state had waived its underlying sovereign immunity from suit for common law tort claims in its own state courts and then removed the suit to federal court. The Court did not consider the situation here where the state has not waived its sovereign immunity in state court but has removed the case to federal court." <u>Johnson v. Board of Police Commissioners</u>, 2007 WL 1629909, *3 (E.D. Mo. June 7, 2007). Like this Court's Chief Judge Catherine D. Perry concluded in <u>Johnson</u>, I too conclude that the Missouri defendants' "immunity remains in federal court, even though [they] removed the case" because they did not waive "sovereign immunity from suit for common law tort claims in [their] own state courts." <u>Id.</u> Therefore, the Missouri State Highway Patrol is dismissed from this action, and Lacy's state law claims against Hoffman in his official capacity only are also dismissed.

Hoffman also contends that Lacy has failed to state a first amendment retaliation claim against him. To state a § 1983 claim for retaliation in violation of the First Amendment, Lacy must allege that he engaged in protected activity; that the government official took adverse action against him that would chill a person

of ordinary firmness from continuing in the activity, and that the adverse action was motivated at least in part by the exercise of the protected activity.  Santiago v. Blair, 707 F.3d 984, 991 (8th Cir. 2013).  Here, Lacy alleges that his first amendment rights were violated "when Officer Proctor told Mr. Lacy 'to shut the fuck up,' when Officer Proctor told Mr. Lacy that he was not to say anything as they left the casino, when Officer Proctor choked Mr. Lacy in an attempt to stifle Mr. Lacy's speech once Mr. Lacy did begin to speak, and when Officer Proctor forced Mr. Lacy against a wall at the justice center and hit Mr. Lacy in the mouth with his forearm and/or elbow in response to Mr. Lacy's comments about Officer Proctor's weight and/or presumed eating habits."  (Pl.'s Sec. Am. Comp. ¶ 125).  None of these allegations involve Hoffman.  Lacy's sole allegation against Hoffman is that "Hoffman . . . acting at the direction of Officer Proctor in assisting in the wheeling of Mr. Lacy out of the casino while Officer Proctor choked Mr. Lacy in an attempt to stifle Mr. Lacy's speech, assisted in said stifling."  (Id. at 126).

This claim lacks facial plausibility and is insufficient to establish that Hoffman violated Lacy's First Amendment rights.  Lacy has failed to plead sufficient factual content which would allow this Court to draw the reasonable inference that Hoffman is liable for Proctor's alleged violation of Lacy's first amendment rights simply by steadying a wheelchair Lacy was riding in.  See Iqbal,

556 U.S. at 678.  There are no factual allegations that Lacy was engaging in protected speech during his ride through the casino, and no facially plausible allegations that holding the side of a wheelchair amounted to an "adverse action" that would chill a person of ordinary firmness from continuing in the activity, or even that Hoffman was motivated at least in part by Lacy's speech rather than a desire to simply steady the wheelchair to assist Lacy.  For these reasons, Lacy has failed to state a violation of the First Amendment with respect to Hoffman.

The same is true of Lacy's first amendment claim against Mellor, which also fails for other reasons discussed below.  Lacy's allegation against Mellor is the same as his allegation against Hoffman – that Mellor "assisted in stifling" Lacy's first amendment rights by wheeling him out of the casino.  Lacy's claim against Mellor fails for the same reasons his claim against Hoffman fails, so it will also be dismissed.

The members of the Board of Police Commissioners of the St. Louis Metropolitan Police Department move to dismiss Lacy's § 1983 claims against them for failure to allege direct involvement in the alleged deprivation of rights or a custom or policy of the police board that caused the violations.  In response, Lacy argues that the police board is liable under § 1983 for failing to train Proctor. "A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents on a respondeat superior theory of liability."  Parrish v.

Ball, 594 F.3d 993, 997 (8th Cir. 2010).[3]  The board members may be subject to §

1983 liability for the inadequate training of Proctor, but only if the training

practices were inadequate, the board was deliberately indifferent to the rights of

others in adopting them, such that the failure to train reflects a deliberate or

conscious choice by the board, and an alleged deficiency in the training

procedures actually caused the plaintiff's injury.  Id. (citing City of Canton v.

Harris, 489 U.S. 378, 389 (1989)).  To state such a claim, Lacy "must demonstrate

that in light of the duties assigned to specific officers . . . the need for more or

different training is so obvious, and the inadequacy so likely to result in the

violation of constitutional rights, that the policy makers of the county can

reasonably be said to have been deliberately indifferent to the need."  Id. at 997-98

(internal quotation marks and citation omitted).  In other words, Lacy must

demonstrate that the police board "had notice that its procedures were inadequate

and likely to result in a violation of constitutional rights."  Id. at 998.

Here, Lacy's second amended complaint contains only barebones

allegations that the board members failed to properly train and/or supervise

Proctor.  See (Pl.'s Sec. Am. Comp. ¶ 105 alleging that "the Board Members

violated Mr. Lacy's constitutional right to be free from excessive force by failing

---

[3]This standard applies to claims brought against the City of St. Louis' Board of Police
Commissioners.  See Suschanke v. Neske, 498 Fed. Appx. 672 (8th Cir. 2013).

to train and/or supervise Officer Proctor with respect to the constitutional duty owed to Mr. Lacy to keep him free from excessive force"); (Id. at 114 in connection with denial of medical treatment claim alleging that "the Police Board failed to adequately train Officer Proctor and/or ensure that St. Louis Metropolitan Police Department and/or Police Board policies would provide for compliance with the same"); (Id. at 129 in connection with first amendment claim alleging only "that Police Board failed to ensure that Officer Proctor was adequately trained and/or supervised regarding the same.").[4] The second amended complaint is devoid of any specific factual allegations supporting a failure to train claim for any of his § 1983 claims, and these perfunctory legal conclusions are insufficient to state a claim against the members of the police board. In his opposition, Lacy argues that, since Proctor committed these alleged constitutional violations, he must not have been adequately trained. This type of bootstrapping argument is not permitted to establish the police board defendants' liability under § 1983. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). "Liability under Section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." Mayorga v. Missouri, 442 F.3d 1128, 1132 (8th Cir. 2006). Because Lacy has failed to adequately allege § 1983 claims for failure to train against the

---

[4]To the extent Lacy alleges that the board members are vicariously liable for Proctor's actions, the claims fail. Hughes v. Stottlemyre, 454 F.3d 791, 798 (8th Cir. 2006).

members of the police board, Counts I, II, III, and IV against these defendants are dismissed.

The police board defendants also contend that Lacy's state law claims against them should be dismissed for failure to state a claim. In support of his claims for assault, battery, and civil conspiracy against "all defendants," Lacy merely alleges that "defendants' or defendants' employees acts occurred in the scope of their employment, and showed complete indifference to or conscious disregard to the safety of Mr. Lacy insofar those acts directly and proximately caused Mr. Lacy to suffer mental pain . . . ." (Pl.'s Sec. Am. Comp. ¶ 133); <u>see also</u> <u>id.</u> at 136 (battery); <u>id.</u> at 140 (civil conspiracy). Lacy argues that, as Proctor's employee, the police board defendants may be held vicariously liable for his alleged assault, battery, and civil conspiracy. While this general proposition of law may apply to private employers, it does not apply here because the police board defendants are public officials:

> It is well-settled law that public officers are not responsible for acts of subordinate officials, if such subordinates are themselves employees of the government, where there is no negligence on the part of such public officials in employing them, unless the superior officer has directed or encouraged or ratified such acts, or has personally co-operated therein.

<u>Smith v. Bowersox</u>, 330 S.W.3d 103, 106 (Mo. Ct. App. 2010) (quoting <u>Davis-Bey v. Missouri Dept. of Correction</u>, 944 S.W.2d 294, 298-99 (Mo. Ct. App.

1997)).  Lacy does not allege that any of the police board defendants took part in his arrest and transport or that they negligently employed Proctor.  Lacy also does not allege that these defendants directed, encouraged, or ratified Proctor's actions or that they personally cooperated with him. Because there are no allegations or facts showing Lacy is entitled to relief, his state law claims against the police board defendants (Counts V, VI, and VII) must be dismissed.  See Smith, 330 S.W.3d at 106-07.  Lacy has failed to state claims against defendants Mayor Francis Slay, Jr., Bettye Battle-Turner, Richard Gray, Erwin O. Switzer, and Thomas Irwin, so they are dismissed from this action.

I now turn to Lacy's claims against Mellor and the casino.  Lacy alleges § 1983 claims against these private actors.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  Roe v. Humke, 128 F.3d 1213, 1215 (8th Cir. 1997).  In general, this requirement prevents the law from reaching the conduct of private parties acting in their individual capacities.  Holloway v. Ameristar Casino St. Charles, Inc., 2010 WL 148441, * 10 (E.D. Mo. Jan. 12, 2010) (citing Lindsey v. Detroit Entertainment, LLC, 484 F.3d 824, 827 (6th Cir. 2007)).  "The Supreme Court has recognized a number of circumstances in which a private party may be characterized as a state actor, such as where the state has

delegated to a private party a power traditionally exclusively reserved to the State, where a private actor is a willful participant in joint activity with the State or its agents, and where there is persuasive entwinement between the private entity and the state." Wickersham v. City of Columbia, 481 F.3d 591, 597 (8th Cir. 2007) (internal quotation marks and citations omitted).

Although his pleadings are silent on this issue, in opposition to dismissal Lacy claims that Mellor and the casino are liable under § 1983 because Mellor was a willful participant in joint activity with the state. Private parties are liable under § 1983 only if they have been jointly engaged with public officers in the denial of civil rights. Young v. Harrison, 284 F.3d 863, 870 (8th Cir. 2002). To make this showing, Lacy must "offer evidence sufficient to support the conclusion that the defendants directed themselves toward an unconstitutional action by virtue of a mutual understanding, and provide facts which would establish a meeting of the minds." DuBose v. Kelly, 187 F.3d 999, 1003 (8th Cir. 1999) (internal quotation marks and citation omitted). "For example a company and its employees may be acting jointly with police, if the police detain accused individuals without conducting an independent investigation, or detain individuals according to a customary plan with the company." Holloway, 2010 WL 148441 at *11 (citing Murray v. Wal-Mart, Inc., 874 F.2d 555, 558-59 (8th Cir. 1989)). However, a private party "does not conspire with a state official merely by invoking an

exercise of the state official's authority." Young, 284 F.3d at 870.

Lacy tries to compare his case to Murray, but those facts are easily distinguishable because in the case at bar, Lacy has not – and cannot – bring any claims for unlawful seizure. After all, he admits he was trespassing. Moreover, Lacy was already under arrest and in the custody of Hoffman when Mellor arrived at the gaming office. Therefore, Mellor can only be considered a state actor for § 1983 purposes if he is a "willful participant" in the alleged events giving rise to his excessive force, denial of medical treatment, or failure to protect claims. Lacy argues that Hoffman and Mellor had a "meeting of the minds" to violate his constitutional rights when Mellor, an EMT, administered a sternum rub to Lacy when they allegedly knew he was feigning unconsciousness. Yet Lacy alleges in his complaint that Mellor performed this test at the direction of Hoffman. (Pl.'s Sec. Am. Comp. ¶ 31).[5] There are no allegations which would allow this Court to

_____

[5]There is no dispute that a sternum rub is a valid medical test to determine consciousness. Lacy just complains that it was unnecessary to perform the test on him because they knew he was faking it. Although not necessary to decide at the present time, I simply note that the Eighth Circuit draws no distinction between active or passive resistance in resisting a police officer's requests. See Wertish v. Krueger, 433 F.3d 1062, 1066-67 (8th Cir. 2006) ("When a suspect is passively resistant, somewhat more force may reasonably be required to effect an arrest."). Lacy was attempting to avoid being taken to jail by feigning injury, unconsciousness, and later, by sliding out of his wheelchair. The reasonableness of the force used to ensure Lacy's compliance with arrest in the face of his resistance is not an issue for today, but will likely be reached on summary judgment motions founded on the doctrine of qualified immunity.

draw the reasonable inference that Mellor had any mutual understanding or meeting of the minds with Hoffman to violate Lacy's constitutional rights when he merely complied with Hoffman's directive to determine if Lacy really was conscious. "[A] private citizen acting at the orders of a police officer is not generally acting in a willful manner, especially when that citizen has no self-interest in taking the action." Harvey v. Plains Township Police Dept., 421 F.3d 185, 196 (3d Cir. 2005). Here, where Lacy alleges in his complaint that Mellor was ordered to perform the test by Officer Hoffman and alleges no self-interest on the part of Mellor, the Court cannot draw the reasonable inference that Mellor was acting under color of state law for § 1983 purposes. See Garay v. Liriano, 839 F. Supp. 2d 138, 141-42 (D.D.C. 2012) (citing Harvey with approval and concluding that plaintiff failed to state § 1983 claim against private landlord because landlord, who opened plaintiff's door at the insistence of police officers, was not state actor); Benta v. Bryan, 420 Fed. Appx. 214, 2-3 (3d Cir. 2011) (private security guards not state actors when they were directed by state officer to prevent plaintiff from entering bandstand and they complied with officer's orders).

The same analysis applies with even more force to Lacy's remaining § 1983 claims against Mellor. Lacy alleges that Proctor refused to let Mellor treat him for his injuries. In his opposition to dismissal, Lacy hypothesizes that Mellor "should have started rendering care" (and then, presumably, stopped only when he was

taken into custody by Proctor for refusing his orders).  As for the breach of duty to protect, after defendants quite rightly point out that it is against the law for a private citizen to intercede in an arrest, Lacy argues only that Mellor "should have spoken up and told Officer Proctor to stop."  These claims are completely lacking in facial plausibility, and this Court is not required to accept such wildly implausible factual scenarios when deciding a motion to dismiss.  More importantly, these hypothetical scenarios, just like Lacy's second amended complaint, are completely devoid of any allegations demonstrating that Mellor was a willful participant in joint activity with Proctor or Hoffman.  Because the Court cannot draw the reasonable inference that Mellor was acting under color of state law for § 1983 purposes, Lacy's § 1983 claims against Mellor are dismissed.[6]

Lacy's § 1983 claims against the casino are even more attenuated.  Lacy alleges that the casino is liable for failing to train Mellor or that it "adopted an unconstitutional policy."  The casino is a private corporation, not a state actor, so unless the corporation was acting "under color of state law," it cannot be held liable under § 1983, either.[7]  Lacy's second amended complaint is devoid of any

---

[6]The same is true of Lacy's first amendment claim against Mellor, which I have already dismissed.  There are simply no allegations that would permit this Court to draw the reasonable inference that Mellor had any mutual understanding or meeting of the minds with Hoffman and/or Proctor to violate Lacy's constitutional rights when he steadied Lacy's wheelchair after Lacy slumped down in it.

[7]Even if the casino were acting under color of state law – which it is not – it still could not be held liable under a theory of respondeat superior.  Smith v. Insley's Inc., 499 F.3d 875,

allegations that would permit the Court to draw the reasonable inference that the casino was acting under color of state law. Simply arguing that a private corporation failed to properly train its employees does not state a § 1983 claim, and Lacy's claim is not saved by his barebones recital about an unidentified "unconstitutional policy," either. Although a private corporation acting under the color of state law may be held liable under § 1983 for unconstitutional policies, simply alleging an "unconstitutional policy" does not make a private corporation a state actor for § 1983 purposes. See Smith, 499 F.3d at 880. Stated plainly, Lacy puts the cart (way) before the horse. Because Lacy has failed to demonstrate that the casino was acting under color of state law for § 1983 purposes, Lacy's § 1983 claims against the casino are dismissed.

Finally, Lacy brings state law claims for assault, battery, and civil conspiracy against Mellor and the casino. In these claims, Lacy merely incorporates the previous 100 or so paragraphs of his complaint and states "as a result of the foregoing," Lacy suffered an assault and battery. He then states that these same paragraphs demonstrate that "defendants' acts of joint participation caused Mr. Lacy to suffer one or more assaults and/or one or more batteries, and served as an agreement by defendants to perform one or more unlawful acts and/or to use unlawful means purportedly lawfully to take Mr. Lacy into custody."

---

880 (8th Cir. 2007).

(Comp. ¶ 139). The Court – and the defendants – are left to guess which of the defendants' alleged actions constitute an assault or a battery. Lacy's deficiencies in pleading are made even more problematic by his attempts to attribute Proctor's and Hoffman's actions to these defendants throughout the complaint. Nevertheless, in his opposition to dismissal, Lacy argues that Mellor's sternum rub forms the basis for his assault and battery claims against Mellor and the casino.[8] Under Missouri law, "an assault is any unlawful offer or attempt to injure another with the apparent present ability to effectuate the attempt under circumstances creating a fear of imminent peril." Holloway, 2010 WL 148441 at * 6 (citing Armoneit v. Ezell, 59 S.W.3d 628, 632 (Mo. Ct. App. 2001) (internal quotation marks omitted). "An assault does not require actual violence or offensive contact." Holloway, 2010 WL 148441 at *6 (citing Phelps v. Bross, 73 S.W.3d 651, 656 (Mo. Ct. App. 2002). "A battery is the willful, offensive touching of another person, and can be seen as the consummation of an assault . . . [for] [e]very battery contains an assault." Holloway, 2010 WL 148441 at *6 (internal citations omitted). "A corporation, on its own, cannot commit an assault or battery." Id. at *7 (internal citations omitted). "As a result, the sole manner in which a corporation could be held liable for an assault and battery would be

---

[8]This action is the only one which could even arguably be considered an assault or a battery by Mellor.

through some agent or employee." Id. (internal quotation marks and citation omitted). "If the employee has not committed a wrong, neither has the corporation." Id.

Here, defendants argue that they are entitled to dismissal of these state law claims because Lacy could not have been in imminent fear of peril of a sternum rub because his eyes were closed at the time. The case cited by defendants in support of this proposition, Geiger v. Bowersox, 974 S.W.2d 513, 516 (Mo. Ct. App. 1998), does not even remotely apply to the facts at bar. Here, Lacy alleges that he was only feigning unconsciousness at the time the sternum rub was administered, and that he suffered apprehension of bodily harm. This Court cannot find that Lacy's claims for assault and battery lack facial plausibility merely because Lacy was not looking at Mellor before he administered the sternum rub. He was conscious and therefore, could have presumably suffered apprehension of bodily harm even without seeing Mellor.

Defendants also argue that these claims should be dismissed because Mellor was justified in administering the sternum rub. Lacy does not address defendants' justification argument in opposition to dismissal. I agree with defendants that justification is a defense to the torts of assault and battery in this case. However, as Neal v. Helbling, 726 S.W.2d 483 (Mo. Ct. App. 1987) (the case cited by defendants) acknowledges, "There can be no doubt that it is the rule in civil

actions for damages on account of assault and battery between private persons the plaintiff may make a prima facie case by merely showing the defendant applied a very slight degree of force to him . . . The assault is presumed to be unlawful, and it then rests with the defendant to justify it; that is to say, if the assault is prima facie shown or admitted, defendant must both plead and prove a justification for making the same . . . ." Id. at 486-87.

In other words, justification is an affirmative defense, not an element of Lacy's case.[9]  Ordinarily, "a plaintiff need not plead facts responsive to an affirmative defense before it is raised." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 601 n.10 (8th Cir. 2009).  Moreover, as a defendant bears the burden of proof on an affirmative defense, it is normally not an appropriate basis upon which to grant a motion to dismiss or for judgment on the pleadings.  However, "[i]f an affirmative defense . . . is apparent on the face of the complaint . . . that [defense] can provide the basis for dismissal under Rule 12(b)(6)." C.H. Robinson Worldwide, Inc. v. Lobrano, 695 F.3d 758, 764 (8th Cir. 2012).

Here, the affirmative defense of justification is apparent on the face of the complaint and can therefore provide a basis for dismissal.  Lacy has not pleaded sufficient factual content that would allow the Court to draw the reasonable

---

[9]Unless, of course, the claims are brought against an officer effecting an arrest. Helbling, 726 S.W.2d at 486-87.  However, as Mellor was not acting under color of state law,  he is not entitled to this modified burden of proof.

inference that Mellor and the casino are liable for assault and battery because Mellor performed a sternum rub (a valid medical procedure to determine Lacy's consciousness) at the express direction of a law enforcement officer. The Court has no trouble concluding that such facts as pleaded by Lacy amount to the affirmative defense of justification to the torts of assault and battery and form an insuperable bar to relief on these claims. Accordingly, these claims will be dismissed.

As for the final count of civil conspiracy[10] to commit assault and battery, "[i]f the underlying wrongful act alleged as part of a civil conspiracy fails to state a cause of action, the civil conspiracy claim fails as well." Envirotech, Inc. v. Thomas, 259 S.W.3d 577, 586 (Mo. Ct. App. 2008) (Baker, J.). As Lacy has failed to state claims for assault and battery against Mellor and the casino, his claim for conspiracy to commit assault and battery likewise fails. See id.

Lacy's claims against defendant Proctor and Counts I, II, and III against defendant Hoffman, as well as the individual capacity claims stated in Counts V and VI against Hoffman, remain pending in this case. The remaining claims and parties are dismissed as set out above. This case will now be set for a scheduling conference by separate Order.

---

[10]"A civil conspiracy is an agreement or understanding between two or more persons to do an unlawful act, or to use unlawful means to do an act which is lawful." Envirotech, Inc. v. Thomas, 259 S.W.3d 577, 586 (Mo. Ct. App. 2008).

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss [#40] is granted, and defendants Bettye Battle-Turner, Richard Gray, Thomas Irwin, Francis G. Slay, and Erwin O. Switzer are dismissed from this action.

**IT IS FURTHER ORDERED** that defendants' motion to dismiss [#42] is granted, and defendant Missouri State Highway Patrol is dismissed from this action, and Count IV against defendant Philip D. Hoffman is dismissed, and Counts V, VI, and VII against defendant Philip Hoffman in his official capacity only are dismissed, but Counts V, VI, and VII against defendant Hoffman in his individual capacity remain pending.

**IT IS FURTHER ORDERED** that defendants' motion to dismiss [#45] is granted, and defendants Casino One Corporation d/b/a Lumiere Place Casino and Charles Mellor are dismissed from this action.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 16th day of July, 2013.